The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the Full Commission finds the same facts and reaches the same conclusions as those reached by the Deputy Commissioner. The Full Commission, in its discretion, has determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support the findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 15 December 1995, an employment relationship existed between plaintiff and defendant.
3. On 15 December 1995, defendant was self-insured, with Gallagher Bassett Services as the servicing agent.
4. Plaintiff's average weekly wage is $182.20, yielding a compensation rate of $122.84 per week.
5. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
6. Industrial Commission Forms 18, 19, 33, 33R and 22 regarding this claim are admitted into evidence as Stipulated Exhibit #2.
7. Plaintiff's medical records from Wilmington Orthopaedic Group are admitted into evidence as Stipulated Exhibit #3.
8. Plaintiff's medical records from Cape Fear Memorial Hospital are admitted into evidence as Stipulated Exhibit #4.
9. Plaintiff's medical records from Duplin General Hospital are admitted into evidence as Stipulated Exhibit #5.
10. Defendant's response to plaintiff's discovery requests are admitted into evidence as Stipulated Exhibit #6.
11. Defendant's investigation reports concerning this claim are admitted into evidence as Stipulated Exhibit #7.
12. Photographs taken at defendant's place of business, individually marked A through E, are admitted into evidence as Stipulated Exhibit #8.
13. The issues for determination before the Deputy Commissioner were: whether plaintiff suffered a compensable injury on 15 December 1995, and, if so, was she entitled to temporary total disability compensation from 18 December 1995 through 21 March 1996 and any further compensation for disfigurement or permanent partial disability.
 ***********
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 15 December 1995, plaintiff was a 25 year old female employed by defendant as a laborer in the cutting department. Defendant is engaged in the business of turkey processing, and is a subsidiary of the Swift Company.
2. On 15 December 1995, plaintiff was performing her normal duties working the line in the cut-up department. The line consisted of a conveyor belt with a set of mechanical cones overhead, which held turkey breasts. Plaintiff's duties entailed pushing the cone so the breast would fall on the belt and continue to another employee for cutting. A large metal or plastic vat was located next to the belt. When the line backed up, plaintiff pushed the breasts into the vat. In order to perform her duties, plaintiff had to stand on a metal stool.
3. The weight of the vats varied, but an empty metal vat weighed approximately two hundred and fifty pounds, and was not wheeled.
4. On 15 December 1995, while performing her duties, plaintiff observed some turkey breasts falling on the floor. The vat had moved approximately six inches away from the conveyor belt. The vat was normally flush against the belt, allowing the breasts to easily slide into the container.
5. Plaintiff attempted to move the metal vat closer to the belt. Plaintiff had moved plastic vats on previous occasions, but had never moved a metal one. Plaintiff leaned over the belt, placed her right hand on the vat, and tried to slide the vat closer to the conveyor belt. Plaintiff's right hand slipped and twisted, causing immediate sharp pain in her fingers. Plaintiff is right-handed, and she worked the rest of her shift using her left hand due to the pain in her right.
6. Plaintiff told a friend and co-worker, Luis Medina, of the incident. He gave plaintiff some creme for her hand, and she thought it would get better.
7. The next day, Saturday, 16 December 1995, plaintiff was not scheduled to work. Her right hand had become purple and swollen, and her pain had increased. Plaintiff continued to use creme and wrap it with a bandage. Mr. Medina visited plaintiff's home Saturday morning, and observed her discolored and swollen hand.
8. As a result of her work-related incident on 15 December 1995, plaintiff sought treatment from the Duplin General Hospital emergency room. She was diagnosed with a fracture of the third metacarpal in her right hand.
9. Plaintiff reported to the plant nurse, Polly Jordening, at defendant's facility, on Monday, 18 December 1995. Ms. Jordening made arrangements for plaintiff to see Dr. Thomas Parent, an orthopaedic surgeon.
10. As a result of her work-related incident on 15 December 1995, Dr. Parent performed an open reduction of the fracture in plaintiff's right hand on 22 December 1995. Dr. Parent also placed two inter-fragmentary screws in plaintiff's right hand to create internal fixation of the long metacarpal.
11. As a result of plaintiff's work-related fracture to her right hand on 15 December 1995, plaintiff was unable to work or earn wages from 18 December 1995 through 21 March 1996. Plaintiff returned to work for defendant after this period earning the same or greater wages than she earned prior to 15 December 1995.
12. As a result of plaintiff's fracture to her right hand and subsequent surgery, the surgical incision made a visible two-inch scar on the upper part of her right hand, below the knuckle of plaintiff's right ring finger.
13. On 21 March 1996, Dr. Parent determined that plaintiff had reached maximum medical improvement, and released her with a zero percent (0%) disability rating to her right hand.
14. Plaintiff's right hand continues to hurt. Plaintiff requests an independent medical examination in order to obtain a second opinion on whether plaintiff retains any permanent partial disability in her right hand.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional:
 CONCLUSIONS OF LAW
1. On 15 December 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury on 15 December 1995, plaintiff is entitled to temporary total disability from 18 December 1995 through 21 March 1996, at her compensation rate of $122.84 per week. N.C. Gen. Stat. § 97-29.
3. It has yet to be determined what, if any, permanent partial disability plaintiff may have sustained as a result of her compensable injury. N.C. Gen. Stat. § 97-31.
4. Plaintiff is entitled to have defendant provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability to plaintiff at a rate of $122.84 per week for the period from 18 December 1995 through 21 March 1996. Accrued temporary total disability payments shall be payable in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded plaintiff in Paragraph 1 of this award is hereby approved for plaintiff's counsel, and is to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of her compensable injury on 15 December 1995, when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
4. Defendant shall pay the costs.
 ***********
Furthermore, the Full Commission enters the following:
 ORDER
IT IS HEREBY ORDERED that plaintiff shall submit to an independent examination by an orthopaedic physician. The physician shall be selected by the parties within thirty (30) days of the filing of this Opinion and Award. Defendant shall arrange for an appointment with this orthopaedist within sixty (60) days of the filing of this Opinion and Award. If the parties are unable to agree on an orthopaedist, each party shall submit a list of three (3) suggested physicians to Deputy Commissioner Theresa Stephenson within forty-five (45) days of the filing of this Opinion and Award, from which the Deputy Commissioner will choose an independent physician. This physician shall be located within a reasonable distance from plaintiff, and be at defendant's expense.
Plaintiff's request with regard to equitable compensation for plaintiff's scar shall be determined upon completion of the independent orthopaedic examination.
 *********** S/ _________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________ CHRISTOPHER SCOTT COMMISSIONER